Morse v. Rathburn.

JOHN H. MORSE, Plaintiff in Error, *v.* GEORGE R. RATHBURN, Defendant in Error.

1. *Contracts—Stipulations—Penalties—Liquidated Damages.*—Plaintiff made an agreement in writing with defendant, concerning the sale of certain lands, by the terms of which nine thousand dollars of purchase money was to be paid at a day and place named, and two notes to be given in the sum of six thousand dollars each, payable in one and two years from date — payment of the notes to be secured by deed of trust on the land. On the payment of the purchase money and the execution of the notes and deed of trust, plaintiff was to give defendant a warranty deed for the property. The agreement further stipulated that "either party failing to comply with its provisions shall forfeit and pay to the other the sum of two thousand dollars." *Held,* that this stipulation should be treated as one for liquidated damages, and not one for a penalty.

2. *Contracts — Stipulations — Liquidated Damages.*—Where the parties have agreed that, in case one of them shall do a stipulated act or omit to do it, the other party shall receive a certain sum as the just, appropriate, and conventional amount of damages sustained by such omission, courts will not interfere to grant relief, but will deem the parties entitled to fix their own measure of damages: *provided,* that the damages do not assume the character of gross extravagance, or of wanton and unreasonable disproportion to the nature and extent of the injury.

3. *Contracts — Stipulations — Penalties — Liquidated Damages.*—When an agreement contains several distinct covenants on which there may be diverse breaches, some of an uncertain nature and others certain, with one entire sum to be paid on breach of performance, then the contract will be treated as one for a penalty, and not for liquidated damages. But where the parties to a contract, in which the damages to be ascertained growing out of it are uncertain in amount, mutually agree that a certain sum shall be the damages in case of a failure to perform, in language plainly expressive of such agreement, and when the intention is plain and palpable, there is no law to justify the courts in giving the contract a different construction.

*Error to Second District Court.*

*Abner Green,* for plaintiff in error.

I. The proviso of forfeiture in the bond goes to the whole contract — not to any trivial, unimportant stipulation or covenant therein. If it did, the sum, perhaps, might be regarded as a penalty. But the parties show by the very terms of their agreement that they intend to fix the amount to be paid for a failure to carry out and perform a stipulated act, viz: the whole contract. And this is in a case "where the damages resulting from the

non-performance of the contract are uncertain, and cannot be admeasured with any degree of accuracy;" therefore (it has been decided) "such sum agreed to be paid by the party in default will be regarded as liquidated damages." (Watts v. Sheppard, 2 Ala. 425 ; 2 Story's Eq. p. 774, § 1318 ; 1 U. S. Dig. p. 513, § 316.)

II. It is a rule in law that "it is not allowable to interpret what has no need of interpretation." (Chitty on Cont. 99.) "Nor will the law make an exposition against the express words and intent of the parties." (Broom's Leg. Max. 266.) In the contract before the court there can be no doubt as to the meaning and intent of the parties, and no court of law or equity can create a contract for them where there is no room for two constructions as to their meaning. (2 Story's Eq. p. 774, § 1318 ; id. §§ 1321, 1323, 1324; Pearson v. Williams, 24 Wend. 244; 26 Wend. 630 ; Kemble v. Farren, 6 Bing. 141.)

The following cases are submitted, as being precisely in point, to show that, in a contract like the one before the court, the sum agreed to be paid as a forfeiture is not to be construed as a penalty, but as liquidated damages. (Chamberlain v. Bagley, 11 N. H. 234, referred to in 1 U. S. Dig. p. 512, §§ 307, 308, 316, 319 ; Gammon v. Howe, 2 Shepley, 250.)

*J. L. Thomas*, and *Fisher & Rowell*, for defendants in error.

I. The sum of money specified in the written agreement read in evidence by plaintiff is a penalty, and not liquidated damages. If damages, the parties would have said so. See the case of Dennis v. Cummins, 3 Johns. Ch. Cas. 297, a case exactly like the one at bar. This was also a contract for the sale of land, and contained the following clause : "And it is further covenanted, in and by the said agreement by and between the said parties, that, in case of failure to fulfill the aforesaid agreements or covenants on the part of either of said parties, the party not fulfilling the said agreement shall forfeit and pay to the other party who shall fulfill the said agreement the sum of two thousand dollars damages." The court decided that the two thousand dollars was a penalty, and not liquidated damages. The law is very clear that, where the

damages are of such a nature that they can be ascertained by a jury, the amount stated by the parties as damages shall be considered as a penalty, and the aggrieved must declare and prove the damages he has sustained. And this is so although the parties state that the amount specified is "liquidated damages." (2 Story's Eq. Jur. p. 540, § 1318 ; Kemble v. Farren, 6 Bing. 141 ; Bagley v. Reddis, 5 Sandf. 192 ; Moore & Hunt v. Platte County, 8 Mo. 467 ; Gower v. Saltmarsh, 11 Mo. 271 ; Basye v. Ambrose, 28 Mo. 39.) In this last case the court reviewed the law at great length, and laid it down as stated in the proposition above.

WAGNER, Judge, delivered the opinion of the court.

On the 7th day of February, 1867, by an agreement in writing, Morse sold to Rathburn his farm in Jefferson county for the sum of twenty-one thousand dollars. By the terms of the agreement nine thousand dollars was to be paid on the 1st day of April, 1867, at the office of Bogy & Fry, in the city of St. Louis, and for the remainder of the purchase-money Rathburn was to execute his two several promissory notes for six thousand dollars each, payable in one and two years respectively, with six per cent. inter est from date.

The payment of the notes was to be secured by the execution of a deed of trust on the land. Upon the payment of the money and the execution and delivery of the notes and deed of trust, Morse was to make, execute, and deliver a good and sufficient warranty deed for the real estate. The agreement contained this further stipulation: "And the said parties to this agreement bind themselves that either party failing to comply with its provisions shall forfeit and pay to the other the sum of two thousand dollars." Morse, at the appointed time, presented his deed and tendered a compliance with his part of the contract, but Rathburn refused to comply or execute it on his part, and this action was instituted to recover the two thousand dollars — the plaintiff contending that it was agreed on between the parties as liquidated or stipulated damages. The Circuit Court refused to give it this construction, and held that it was a penalty, and that the plaintiff

could only recover such damages as he could show by evidence that he was entitled to by reason of the breach. This view of the subject was also entertained by the District Court, and the plaintiff has brought the case here by writ of error.

It is perfectly competent for parties, when entering into an agreement, to avoid all controversy as to the amount of damages which may result from a violation of the contract, and to agree upon a fixed, certain, and definite sum which shall be paid by the party in default. The damages in such a case are termed liquidated, stipulated, or stated damages. But in such cases great difficulty has been experienced in giving the contract a practical application and construction in determining whether the damages should be regarded as liquidated, or as a mere penalty only. The question is environed with doubt and contradiction, and the decisions are conflicting and inharmonious. Mr. Sedgwick, the learned author of the Treatise on Damages, says: "The subject matter of the contract and the intention of the parties are the controlling guides. If, from the nature of the agreement, it is clear that any attempt to get at the actual damage would be difficult, if not vain, then the courts will incline to give the relief which the parties have agreed on. But if, on the other hand, the contract is such that the strict construction of the phraseology would work absurdity or oppression, the use of the term liquidated damages will not prevent the courts from inquiring into the actual injury sustained and doing justice between the parties."

Judge Story says that "the general principle adopted is that whenever a penalty is inserted merely to secure the performance or enjoyment of a collateral object, the latter is considered as the principal intent of the instrument, and the penalty is deemed only as accessory, and therefore as intended only to secure the due performance thereof, or the damage really incurred by the non-performance. In every such case the general test by which to ascertain whether relief can or can not be had in equity is to consider whether compensation can be made or not. But the writers all concur that, where the parties have agreed that in case one party shall do a stipulated act, or omit to do it, the other party shall receive a certain sum as the just, appropriate, and

conventional amount of damages sustained by such act or omission, courts will not interfere to grant relief, but will deem the parties entitled to fix their own measure of damages ; provided that the damages do not assume the character of gross extravagance, or of wanton and unreasonable disproportion to the nature and extent of the injury.

Where an agreement was entered into by the defendant to perform for the plaintiff at his theater, and attend all rehearsals, or pay the established fines for all forfeitures of any kind whatsoever, with a clause that either of the parties neglecting to perform the agreement should pay the other £200, and the declaration averred a refusal to perform—plea, non-assumpsit—on trial, a verdict was had for £20, with leave to the plaintiff to enter a verdict for £200 if the court should consider the agreement one in the nature of liquidated damages. Here it will be seen that the phrase *liquidated damages* was not used, and that if the sum of £200 was not construed as a penalty merely, the non-payment of any one of the fines would have forfeited the whole amount. Lord Eldon, then Lord Chief Justice of the Common Pleas, in delivering the judgment of the court, said that he "had felt much embarrassment in ascertaining the principle of the decisions," and that "this appeared to him the clearest principle : that where a doubt is stated, whether the sum inserted be intended as a penalty or not, if a certain damage less than that sum is made payable upon the face of the same instrument in case the act intended to be prohibited be done, that sum shall be construed to be a penalty, though the mere fact of the sum being apparently enormous and excessive would not prevent it from being considered as liquidated damages." He added further: "*Prima facie*, this certainly is contract, and not penalty, but we must look to the whole instrument," and it was held a penalty. (Astley v. Weldon, 2 Bos. & Pul. 346.)

The doctrine laid down in Astley v. Weldon was applied in a subsequent case (Kemble v. Farren, 6 Bing. 141) to a very similar state of facts. The defendant had agreed with the plaintiff to act as principal comedian at Covent Garden, and to conform to its rules ; the plaintiff to have £3 6s. 8d. every night that

the theater should be open. And the agreement contained a clause that if either party failed to fulfill his agreement, or any part thereof, or any stipulation therein contained, such party should pay the other the sum of £1,000 ; to which sum it was agreed that the damages should amount, and which sum was declared by the parties to be liquidated and ascertained damages, and not a penalty or penal sum, or in the nature thereof. The breach alleged was a refusal to act during the second season, and the jury gave a verdict for £750. A motion was made to increase this verdict to £1,000, on the ground that that sum was the amount liquidated by the parties ; but it was denied. Tindal, C. J., delivered the opinion of the court, and his remarks contain such a full and precise exposition of the doctrine which has been followed in other cases that we will transcribe a portion of them :

"It is undoubtedly difficult to suppose any words more precise or explicit than those used in the agreement — the same declaring not only affirmatively that the sum of £1,000 should be taken as liquidated damages, but negatively also that it should not be considered as a penalty, or in the nature thereof. And if the clause had been limited to breaches which were of an uncertain nature and amount, we should have thought that it would have had the effect of ascertaining the damages upon any such breach at £1,000. For we see nothing illegal or unreasonable in the parties, by their mutual agreement, settling the amount of damages, uncertain in their nature, at any sum upon which they may agree. In many cases such an agreement fixes that which is almost impossible to be accurately ascertained, and in all cases it saves the expense and difficulty of bringing out that point. But in the present case, the clause is not so confined ; it extends to the breach of any stipulation by either party. If, therefore, on the one hand, the plaintiff had neglected to make a single payment of £3 6s. 8d. per day, or on the other hand the defendant had refused to conform to any usual regulations of the theater, however minute or unimportant, it must have been contended that the clause in question, in either case, would have given the stipulated damages of £1,000. But that a very large sum should become immediately payable in consequence of the non-payment of a very small sum, and that

the former should be considered a penalty, appears to be a contradiction in terms; the case being precisely that in which courts of equity have always relieved, and against which courts of law have in modern times endeavored to relieve, by directing juries to assess the real damages sustained by the breach of the agreement. It has been argued at the bar that the liquidated damages apply to those breaches of the agreement only which are in their nature uncertain, leaving those which are certain to a distinct remedy, by the verdict of a jury; but we can only say, if such is the intention of the parties, they have not expressed it, but have made the clause relate, by express and positive terms, to all breaches of every kind. We cannot, therefore, distinguish this case in principle from that of Astley v. Weldon, in which it was stipulated that either of the parties neglecting to perform the agreement should pay to the other of them the full sum of £200, to be recovered in his Majesty's Courts at Westminster."

The doctrine in this case has been repeatedly recognized, and its reasoning was applied and enforced in this court in the case of Basye v. Ambrose, 28 Mo. 39, where the defendant Ambrose bound himself in the sum of one thousand dollars to Basye and Bachman as liquidated damages, and not as a penalty, in consideration of certain acts to be performed by them, to go with them to California to dig for gold. He, on his part, stipulated to do and perform many acts, some of them very trivial and unimportant in their nature; and he obligated himself, in case of failure to comply with his contract, to pay Basye and Bachman one thousand dollars as liquidated damages, and, in the event of their receiving damages over that sum, he was to pay whatever damages they might sustain; but in no event were the damages to be less than one thousand dollars. Here the one thousand dollars was to be paid for the breach of any one of the conditions, without regard to how trifling it might have been, or whether Basye and Bachman suffered any injury in consequence thereof or not, and notwithstanding that the damages might have been susceptible of easy and exact ascertainment by evidence before a jury. It was held that the whole scope and tenor of the instrument showed that the stipulation was designed as a penalty, and not stated damages.

To the same effect see Hammer v. Breidenbach, 31 Mo. 49;
Moore v. Platte County, 8 Mo. 469; Gower v. Saltmarsh, 11
Mo. 273; Daily v. Litchfield, 10 Mich. 29; Lampman v. Coch-
ran, 16 N. Y. 275; Lord v. Gaddis, 9 Iowa, 235; Hallock v.
Slater, *id.* 599; Higginson v. Weld, 14 Gray, 165.

The general rule may be formally stated that when the agree-
ment contains several distinct covenants, on which there may be
divers breaches, some of an uncertain nature and others certain,
with one entire sum to be paid on breach of performance, then
the contract will be treated as one for a penalty, and not for
liquidated damages. In some instances it has been decided that
from the very excessiveness and disproportion of the damages to
the injury sustained, a penalty was inferable, instead of liquidated
damages. Thus, in Dennis v. Cummins, 3 Johns. Ch. Cas. 297, the
parties contracted for an exchange of lands, and the plaintiff agreed
to let the defendant have seven hundred acres of land, in the county
of Ontario, at the appraisal of men, in part payment for a farm
which the defendant agreed to sell the plaintiff, lying in the
county of Columbia, valued at three thousand seven hundred and
fifty dollars. The agreement, after mentioning the terms of
exchange, contained the following covenant: " And it is further
covenanted, in and by the said agreement by and between the
said parties, that, in case of failure to fulfill the aforesaid agree-
ments or covenants on the part of either of said parties, the
party not fulfilling the said agreements shall forfeit and pay to
the other party who shall fulfill the said agreement the sum of
two thousand dollars damages." The court held that it was a
penalty — Thompson, J., saying: " If recurrence be had to this
agreement, it never can be presumed that the parties had the sum
in view as the measure of damages; for the full value of the
defendant's property which was to be exchanged was only three
thousand seven hundred and fifty dollars; and the value of the
plaintiff's considerably less. It would be a strange construction
to suppose that the damages, on a failure in fulfilling such a bar-
gain, should be two thousand dollars." But in the same court,
where the defendant covenanted to assign to the plaintiff a lease,
and to deliver possession thereof, with the following provision—

"And I further covenant that, in case of non-performance of any or either of the above covenants, I will forfeit the sum of five hundred dollars, as the liquidated damages, to the said Knapp"— it was said: "It is a clear case of liquidated damages, if it is in the power of the party to liquidate them." (Knapp v. Maltby, 13 Wend. 587; Pearce v. Williams, 24 Wend. 244; Hasbrouck v. Tappan, 15 Johns. 200; Reynolds v. Bridge, 6 El. & Bl. 528; Cotheal v. Talmage, 9 N. Y. 551; Clement v. Cash, 21 N. Y. 253; Dunlap v. Gregory, 10 N. Y. 241.) Where a bond was given by the plaintiff to the defendant, conditioned that certain work should be done by himself and another party for a certain sum within six weeks, and if not they would "forfeit and pay" a designated amount for every week till it was finished, Buller, J., declared that it was as strong a case of liquidated damages as could exist. (Fletcher v. Dyche, 2 T. R. 32.) In Cheddick's Ex'r v. Marsh, 1 Zabriskie, 463, it was held that when a party to an agreement contracts, upon a given event, to "forfeit and pay a certain sum of money, the natural and legal import of the terms renders that sum stipulated damages or compensation, and not a penalty, unless a contrary intention is to be inferred from other parts of the agreement. In Streeper v. Williams, 48 Penn St. 450, a hotel owner agreed to sell it for fourteen thousand dollars (of which three thousand dollars was to be paid at a specified time, when a deed was to be signed), part possession to be delivered immediately; and in the contract the parties agreed to forfeit five hundred dollars in case either failed to comply with its terms: *held*, that the forfeiture was intended by the parties as a compensation to either, in case the other wholly abandoned the contract, and that it was liquidated damages and not a penalty.

In the case of Clement v. Cash, *supra*, the consideration for the premises sold was nine thousand dollars, and the contract required the plaintiff to pay four thousand dollars on the first day of April, 1855; to assign two mortgages, one for three thousand seven hundred and thirty-seven dollars, and the other for one thousand dollars; to convey to the defendant a house and lot, and to deliver to him two promissory notes to be made by the

plaintiff, with a good indorser, for five hundred dollars ; all which acts were to be performed on the first day of April, 1855, on which day the defendant was to execute a conveyance to the plaintiff of the land specified ; and in default by either party, the one complying with his contract was to recover two thousand dollars as liquidated damages. In a very thorough discussion of the question, the court declared that the contract, in legal effect, provided but for the performance of a single transaction on each side, and at the same period of time, viz : the execution and delivery of a deed of the land by the defendant, and payment therefor by the plaintiff ; that the defendant agreeing to receive in payment for his deed and the plaintiff to pay, simultaneously with its delivery, the consideration in money and other property, could not divest what was to be done of the character of a single transaction. And it was accordingly adjudged that there was nothing unconscientious in enforcing the agreement made by the parties themselves, and that the damages were compensatory, and not to be regarded as a penalty.

Where the parties to a contract, in which the damages to be ascertained growing out of a breach are uncertain in amount, mutually agree that a certain sum shall be the damages in case of a failure to perform, in language plainly expressive of such agreement, and when the intention is plain and palpable, there is no law, that I am aware of, to justify the courts in giving the contract a different construction or saying that the parties meant something else. Where the sum fixed is greatly disproportionate to either the actual or presumed damage, showing that one side was the victim of oppression, a court exercising equity powers would interfere. But no such facts are exhibited in this case. The agreement and the matters and things to be performed by the respective parties constitute essentially one entire transaction.

The loss resulting from non-performance on either side was vague and uncertain, and insusceptible of any precise or accurate ascertainment. Morse, relying on the execution of the contract in good faith, may have purchased other property, or made arrangements to invest the money arising from the sale of his land in other business. Now, it is evident, and every one can see

Morse v. Rathburn.

the difficulty there would be in attempting to reach the real damage which men must necessarily suffer from disappointment in their plans; and many of the subjects of loss or damage cannot even be given in evidence. An accurate account can scarcely be stated in dollars and cents; and in a contract of the magnitude of the one in controversy but few would place the estimate lower than the amount agreed upon by the parties in case of total abandonment. If interference were justified on the ground that the sum named was oppressive or grossly disproportionate to the real injury, such disproportion is certainly not apparent in this case.

This case seems to have been tried in a very summary manner in the Circuit Court, and no evidence was introduced or admitted in regard to a certain defense set up in the answer. It may safely be assumed that the expression of opinion by the court in regard to the nature of the damages, before the cause was really submitted, suspended the necessity of the defendant availing himself of the question of misrepresentation which he alleged was practiced upon him by the plaintiff. As the cause will be remanded, if there is any merit in the defense the defendant will be entitled to the full benefit of it.

The judgment will be reversed and the cause remanded. The other judges concur.