**The GIOMONA CORPORATION, Plaintiff-Respondent,**

v.

**J. D. DAWSON, Dean Hicks, Dorothy Hicks, and Murrel Indermuehle, d/b/a Owensby & Son Real Estate, Defendants-Appellants.**

**No. 10352.**

Missouri Court of Appeals, Springfield District.

July 20, 1978.

---

David L. Smith, Woolsey, Fisher, Clark, Whiteaker & Stenger, Springfield, for defendants-appellants.

J. A. Appelquist, Springfield, Kerry D. Douglas, Douglas & Douglas, Bolivar, for plaintiff-respondent.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

FLANIGAN, Judge.

With disarming simplicity Rule 87.03,[1] a part of Rule 87 dealing with Declaratory Judgments, reads: "A contract may be construed either before or after there has been a breach thereof." This action is an example of the operation of Rule 87.03. See *Mercantile Trust Company v. Chase Hotel, Inc.*, 510 S.W.2d 807 (Mo.App.1974).

On September 9, 1973, a written agreement, identified in the record as Exhibit 1, was entered into between J. D. Dawson, as purchaser, and Dean Hicks and Dorothy Hicks, husband and wife, as sellers, for the sale of 1,820 acres in Dallas County. The real estate agent, acting for the sellers, was Murrel Indermuehle. Dawson made a payment of $2,000 when he executed Exhibit 1 on September 9, 1973. The purchase price was $200,000 and it was to be paid in three installments: the initial payment of $2,000, an $18,000 payment on September 17, 1973, and the balance of $180,000 on January 2, 1974.

Later in September 1973, Dawson, as purchaser, and Dean Hicks and Dorothy Hicks, as sellers, entered into a written agreement, identified as Exhibit 3. One of the recitals of Exhibit 3 is an acknowledgment by Mr. and Mrs. Hicks of the receipt of $20,000 from Dawson. The record is unclear as to when the $18,000 installment, a portion of the $20,000, was paid by Dawson but it seems clear that the payment of it was timely. Still later in September 1973, Dawson executed Exhibit 2, by which he assigned to plaintiff his interests in Exhibit 1 and Exhibit 3. Plaintiff The Giomona Corporation paid Dawson $20,000 for the assignment, the mechanics of that payment being that plaintiff's $20,000 was paid to Indermuehle, as escrow agent, and Indermuehle returned to Dawson the $20,000 which Dawson had previously paid.

Plaintiff brought this action against defendants Dawson, Mr. and Mrs. Hicks, and Indermuehle. Count I of the petition sought a declaratory judgment. Count II sought the return of $20,000 based on an allegation that "defendants" had "defaulted under the agreements of the parties." The parties agreed to a separate trial of the issues on Count I. The trial court, sitting without a jury, found in favor of the plaintiff on Count I and in the judgment designated its findings with respect to Count I as a final judgment for the purposes of appeal.

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

Rule 81.06. Count II remains pending in the trial court.

On this appeal by defendants the issue is whether the exhibits, properly construed, call for the forfeiture of $2,000 (as plaintiff contends and as the trial court found) or $20,000 (as defendants contend) in the event of a default by the *purchaser* (or, in this instance, by plaintiff as the purchaser's assignee). Defendants assert that a "fair construction" of the exhibits shows that the parties intended that "in the event of default on the part of plaintiff, defendants were to retain $20,000 earnest money and were not limited to $2,000 as adjudged by the trial court."

There has been no determination of whether any party to the transaction has been guilty of any breach or default. The validity of the assignment to plaintiff has not been questioned and is tacitly conceded. The nature or amount of actual damages, if any, sustained by any party has not been adjudicated. The inquiry on this appeal is limited to whether the exhibits are reasonably subject to the construction placed upon them by the trial court. Stated otherwise, did the trial court err in rejecting defendants' contention that the exhibits call for a forfeiture of $20,000 in the event of default on the part of plaintiff? This court holds that the trial court properly construed the exhibits and the defendants' claim of error is without merit.

Defendants concede that the portions of Exhibit 1 which are germane to the issue on this appeal are as follows: (Italics added)

"Exhibit 1

September 9, 1973

*Received* of J. D. Dawson, hereinafter mentioned as the Purchaser, the sum of *Two Thousand Dollars ($2,000.00) as earnest money and in part payment* for the purchase of the following described real estate situated in County of Dallas, State of Mo., and more particularly described as follows, to-wit:

[description given]

which we have this day sold to the Purchaser for the sum of Two Hundred Thousand Dollars ($200,000.00) on the following terms, to-wit: The sum of *Two Thousand Dollars ($2,000.00) as hereinabove receipted for;* balance of One Hundred Ninety-eight Thousand Dollars ($198,000) to be paid as follows: Eighteen Thousand Dollars *more* on the 17th day of Sept., 1973 and the balance of $180,000.00 all due and payable on January 2, 1974.

An abstract from a reliable abstract company showing good and marketable title is to be furnished the Purchaser forthwith. It is agreed that if the Owner does not approve the above sale, or if the title to the said premises is not marketable, or cannot be made so within a reasonable time after notice containing written statement of defects is delivered to Owner, *the earnest money herein receipted for* shall be *refunded* to the Purchaser. But if the above sale is approved by the Owner and the title to the said premises is marketable, and the Purchaser neglects or refuses to comply with any of the conditions of this sale and to make payments promptly, as hereinabove set forth, then *the earnest money herein receipted for* shall be *forfeited* to the undersigned Agent to the extent of the agreed upon commission, and the residue to the Owner as liquidated damages, and this contract shall thereupon be of no further binding effect.

.   .   .   .   .

Time is of the essence of this contract."

Exhibit 1 was signed by J. D. Dawson, as Purchaser, and Dean Hicks and Dorothy Hicks, as Owner. September 9, 1973, is shown as the date on which all parties signed the exhibit.

Defendants concede that the portions of Exhibit 3 which are germane to the issue on this appeal are as follows:

"Exhibit 3

MODIFICATION OF EARNEST MONEY RECEIPT

Dated: September ____, 1973

PARTIES:

J. D. DAWSON ("Purchaser")

DEAN HICKS and DOROTHY HICKS, his wife, ("Sellers")

RECITAL:

The parties hereto entered into an Earnest Money Receipt dated September 9th, 1973, wherein the Sellers agreed to sell to the Purchaser 1,820 acres of real property situate in Dallas County, Missouri, . . . The parties desire to modify said Earnest Money Receipt as more particularly herein set forth.

TERMS:

The parties hereto agree as follows:

1. . . .
2. . . .
3. . . .
4. . . .
5. The parties hereto acknowledge that the earnest money deposit in the aggregate sum of Twenty Thousand & 00/100 ($20,000.00) Dollars has been paid and is being held in escrow pending the closing by [Indermuehle]."

Exhibit 3 was signed by Dawson as purchaser and by Dean Hicks and Dorothy Hicks as sellers. It bears no date other than "September ____, 1973." However, defendants' brief admits that Exhibit 3 "clearly reflects that it was entered into subsequent to Exhibit 1." That defendants' admission is a realistic one is demonstrated by the fact that Paragraph 5 of Exhibit 3 mentions that $20,000 "has been paid," and such sum had not been paid until the $18,000 payment was made by Dawson to Indermuehle "later"[2] in September, i. e., some date in September after September 9.

It should be observed that Count II of the petition, which remains pending in the trial court, alleged that *"defendants"* defaulted. However, the trial court's judgment on Count I is under attack insofar as it determined what the agreements call for in the event of a default by *plaintiff*.

Defendants' brief refers to the sentence in Exhibit 1 beginning with the words "but if" as "the forfeiture clause." Defendants argue that at the time of the execution of Exhibit 2, the assignment from Dawson to plaintiff, "there had been $20,000 earnest money paid and $20,000 earnest money receipted for." Defendants say that a fair construction of Exhibits 1 and 3 shows that "all monies paid and referred to as earnest money and which had been receipted for constituted forfeiture money." These arguments are untenable.

The opening paragraph of Exhibit 1 includes the recital: "Received of J. D. Dawson, hereinafter mentioned as the purchaser, the sum of Two Thousand Dollars ($2,000) as earnest money. . . . " The same paragraph also refers to the $2,000 as being "in part payment" of the purchase price. Later in the same paragraph the $2,000 is accorded the description, "as hereinabove receipted for." The paragraph then mentions the balance of the purchase price as being $198,000 to be paid in two steps, one of $18,000 and the other of $180,000. Defendants emphasize the word "more," which immediately follows the words, "Eighteen Thousand Dollars." Defendants say that the word signifies that "$18,000 more was to be added onto the $2,000 earnest money which had been receipted for." Such a construction seems strained, and word "more" may refer to "more" of the purchase price itself, but Exhibit 3 itself demonstrates that the parties regarded the earnest money to consist of $20,000 and not $2,000. It does not follow, however, that the parties by their writings intended a forfeiture of all of the earnest money in the event of a default by the purchaser.

The second paragraph of Exhibit 1 uses the word "forfeited" only with respect to a default by the purchaser. There is no language of forfeiture with respect to a default by the owner (or sellers). Provision was made for the return of the earnest money "herein receipted for" to the purchaser in the event the owner did not ap-

---

**2.** *Defendants' brief states:* "When Exhibit 1 was executed on September 9, Indermuehle received a payment of $2,000 and *later* received an additional $18,000 from Dawson."

prove the sale. Approval of the sale by owner, defendants Hicks, was signified by their act of signing Exhibit 1 which did not become a contract until that occurred. The earnest money "herein receipted for" was also to be refunded to the purchaser if the title was defective. In those events the purchaser would receive a refund of his own money, but it could not rightly be said that this imposed a "forfeiture" upon sellers.[3]

The "forfeiture clause," as defendants label it, confines its operation to a situation where "the purchaser neglects or refuses to comply with any of the conditions of this sale and to make payments promptly, as hereinabove set forth." When such occurs, the clause continues, "the earnest money herein receipted for shall be forfeited to the undersigned agent to the extent of the agreed upon commission, and the residue to the owner as liquidated damages, and this contract shall thereupon be of no further binding effect."[4]

That which the purchaser "forfeits" in the event of the operation of the "forfeiture clause" is "the earnest money herein receipted for." The only payment by Dawson which was "receipted for" by Exhibit 1 was that of $2,000. The opening sentence of Exhibit 1 so recites. The latter portion of the first paragraph of Exhibit 1 refers to the $2,000 as being "hereinabove receipted for." It is true that the paragraph makes mention of $18,000 *but it was not "herein receipted for."* That is so for the obvious reason that the $18,000 in fact had not yet been received. When it *was* received, some days later, it was included, by Exhibit 3, in the category "earnest money deposit" *but Exhibit 3 made no change in the "forfeiture clause" of Exhibit 1.* The latter was clearly

limited to a forfeiture of "the earnest money herein receipted for."

Indeed, if the parties contemplated a forfeiture of all of the earnest money, the forfeiture clause would have read, "the earnest money shall be forfeited," rather than "the earnest money *herein receipted for* shall be forfeited." Defendants' contention accords no significance to the inclusion of the words "herein receipted for." Moreover, if it be assumed that the forfeiture clause was to receive defendants' construction of it and was to receive literal enforcement, anomalous results might ensue. If the purchaser defaulted before making the $18,000 payment, thereby violating the clause, $2,000 would be forfeited. If the purchaser made the first two payments but defaulted in making the third, thereby violating the clause, $20,000 would be forfeited. On this hypothesis the purchaser who had done more toward fulfilling his contractual obligations would suffer more than one who had done less, a result not reasonably within the intention of the parties and certainly not one countenanced by the law.

"Forfeitures are not favored, and all conditions or provisions in contracts providing for them must be strictly construed." *Robinson v. Cannon,* 346 Mo. 1126, 145 S.W.2d 146, 149 (1940). "Forfeitures are enforced only where there is the clearest evidence that that was what was meant by the stipulation of the parties." *Schurtz v. Cushing,* 347 Mo. 113, 146 S.W.2d 591, 594 (Mo.1941). "Since forfeitures are not favored either in equity or in law, provisions for forfeitures are to receive, where the intent is doubtful, a strict construction against those for whose benefit they are introduced." 17 Am.Jur.2d Contracts § 500, p. 976. Even if the so-called "forfeiture clause" be treated as a provision for liqui-

---

**3.** "The word 'forfeiture' carries an implication of deprivation of something previously owned." Williston on Contracts, Third Edition, Vol. 5, § 769, p. 640.

**4.** Neither side attaches significance to any of the following: (a) the presence, in the forfeiture clause, of the following words: " . . . to the undersigned agent to the extent of the agreed upon commission and the residue . . . "; (b) the line on Exhibit 1 which called for the signature of agent Indermuehle was left blank; (c) there was no evidence of the amount of "the agreed upon commission."

dated damages [5] such a provision must be strictly construed against the party seeking to invoke its benefits. *United States v. Marietta Manufacturing Co.,* 53 F.R.D. 390, 400[4] (1971); *Climatic Rainwear Co. v. United States,* 115 Ct.Cl. 520, 88 F.Supp. 415, 421[5, 6] (1950); *Tobin v. United States,* 103 Ct.Cl. 480, 59 F.Supp. 410, 416 (1945); *Close v. Blumenthal,* 11 Utah 2d 51, 354 P.2d 856, 857[2] (1960); 25 C.J.S. Damages § 114, p. 1087.

■ The trial court did not err in rejecting defendants' contention that the exhibits call for a forfeiture of $20,000 in the event of default on the part of the plaintiff. The trial court properly found that the exhibits call for a forfeiture of $2,000 in the event of a default by plaintiff.

■ The foregoing is dispositive of defendants' second "point relied on" which is to the effect that the trial court erred in ruling inadmissible certain oral testimony offered by defendants with respect to their intentions concerning the meaning of the "forfeiture clause." " 'If the terms of a contract are clear and unambiguous the contract will be enforced or given effect in accordance with its terms, and without resort to construction to determine the intention of the parties. In such case the construction of the parties, if at variance with the written terms, will not be followed, but the contract will be construed as written. "When the language of a contract is plain, there can be no construction because there is nothing to construe".' " (Internal citations omitted.) *Willman v. Beheler,* 499 S.W.2d 770, 774[2, 3] (Mo.1973). The rejected testimony contradicts rather than explains the terms of Exhibit 1 and therefore was, under the parol evidence rule, inadmissible. *Duggins v. Simons,* 517 S.W.2d 82, 94[5] (Mo.1974).

The trial court accurately determined the *meaning* of the "forfeiture clause." What effect, if any, will be accorded to that clause remains an open inquiry.

The judgment is affirmed and the cause is remanded for further proceedings consistent with this opinion.

All concur.

---

**5.** For Missouri cases involving real estate contract clauses of the general type under consideration, discussing the distinction between provisions for forfeiture or penalty on the one hand and provisions for liquidated damages on the other, and reaching varying results on varying facts, see, among others: *Plymouth Securities Company v. Johnson,* 335 S.W.2d 142 (Mo. 1960); *Robert Blond Meat Company v. Eisenberg,* 273 S.W.2d 297 (Mo.1954); *Wilt v. Waterfield,* 273 S.W.2d 290 (Mo.1954); *Long v. Lackawanna Coal and Iron Co.,* 233 Mo. 713, 136 S.W. 673 (Mo.1911); *Morse v. Rathburn,* 42 Mo. 594 (1868); *Black v. Emory,* 275 S.W. 48 (Mo.App.1925); *Adams v. Luckaman,* 256 S.W. 103 (Mo.App.1923); *Bachman v. H. R. Ennis Real Estate & Inv. Co.,* 199 Mo.App. 674, 204 S.W. 1115 (Mo.App.1918), and *Tinkham v. Satori,* 44 Mo.App. 659 (1891).

See also Restatement of Contracts, § 339, and 6 A.L.R.2d 1401 (provision in land contract for forfeiture of payments as one for liquidated damages or penalty).