Parlin & Orendorff Co. v. Boatman.

## PARLIN & ORENDORFF COMPANY, Appellants v. W. W. BOATMAN, Respondent.

### Kansas City Court of Appeals, May 6, 1901.

1. **Appellate Practice: CONTRACT: PENALTY: DAMAGES: SECOND APPEAL.** The opinion in a former appeal, that a stipulation in a contract providing against the countermanding of an order for goods except on the payment of twenty per cent of the purchase price. is a penalty and not liquidated damages, is adhered to on a second appeal.

2. **Sales: DAMAGES: MARKET VALUE: INSTRUCTION.** The market value means the usual and ordinary selling price of goods at the place of delivery, or, if there is no market price at such place then at the nearest place where such sales are usually made, but in this case there was no evidence showing the market value at the place of delivery, nor any instruction telling the jury what was the place of delivery.

3. ———: *MARKET VALUE: PLACE OF DELIVERY.* Evidence of the market value at another place than that of delivery is prejudicial where there is evidence of a market price at the place of delivery, but in the absence of the latter class of evidence, it furnishes no ground for complaint.

Appeal from Boone Circuit Court.—*Hon. John A. Hockaday,*
Judge.

A'FFIRMED.

*Robertson & Barnes* for appellant,

(1)   The order having been made at Centralia and trans-
mitted to St. Louis for acceptance and there accepted, the con-
tract was not complete until accepted, and St. Louis would be
the place of making the contract.   "Contract by letter or tele-
gram should be referred to the place whence the acceptance is
dispatched."   1 Am. and Eng. Ency. of Law, (2 Ed.), 136;
Perry v. Iron Co., 15 R. I. 380; 2 Am. St. Rep. 902; Hunt v.
Jones, 34 Am. Rep. 635; Beach on Mod. Law of Contr. sec.
66.   (2)   By the terms of the contract the sale was completed
and the delivery made at St. Louis, for a delivery to the carrier
at St. Louis, was a delivery to the plaintiff, or a contract to
deliver to carrier at St. Louis would be a delivery at St. Louis.
Scharff v. Meyer, 133 Mo. 428; Comstock v. Affoelter, 50 Mo.
411; Evans & Co. v. Railroad, 64 Mo. App. 305; Graff v. Fos-
ter, 67 Mo. 512; Whitmore v. Coats, 14 Mo. 9; Green v. Mof-
fett, 22 Mo. 529; White v. Salisbury, 33 Mo. 150; Rickey v.
Tenbroeck, 63 Mo. 563; Dobbins v. Edmonds, 18 Mo. App.
307; Cobb v. Whitsett, 51 Mo. App. 146.   (3) From the read-
ing of the testimony in this case and from the very nature of the
contract and property sold, it is brought within the reasons of
contracts provided for liquidated damages.   Vaughn v. Rail-
road, 78 Mo. App. 639; Bird v. Sellers, 113 Mo. 580; Rut-
ledge v. Railroad, 123 Mo. 131; Wilson v. Beckwith, 140 Mo.
369.   (4)   The facts of this case bring it within the rule laid
down in May v. Crawford, 150 Mo. 530.   To determine
whether it is a penalty or liquidated damages, the tests are:

*First.* The language employed. *Second.* The subject-matter of the contract. *Third.* The intention of the parties.

*E. W. Hinton* for respondent.

(1) The appellant's contention that the trial court confined the evidence of market value to Centralia and vicinity and excluded St. Louis, is wholly without foundation in fact, and would not require serious consideration except for the color lent to it by the misleading abstract submitted on its behalf. (2) The plaintiffs instruction number three, as asked, simply told the jury that the measure of damages was the difference between the contract price and the market value. To this the court added "at the place of delivery." Plaintiff now complains because the court did not further add that St. Louis was the place of delivery. A sufficient answer to this rather unusual contention would seem to be found in the rule that in civil cases the court is not bound to instruct on any particular point unless so requested, and hence if the plaintiff desired a more specific instruction defining the place of delivery, it should have asked it. Quirk v. Elevator Co., 126 Mo. 279; Warder v. Henry, 117 Mo. 530; Haymaker v. Adams, 61 Mo. App. 581; Taylor v. Springfield, 61 Mo. App. 263. (3) Since the plaintiff's only witness on value confessedly did not know the market value of any of the articles, either in St. Louis or elsewhere, it can not be material to determine what market should govern. In the absence of even an offer of proof as to the market value, the plaintiff has no standing to complain of a nominal recovery. Parlin & Orendorff Co. v. Boatman, 84 Mo. App. 67; Dana v. Fiedler, 12 N. Y. 40. (4) The facts being the same, the decision of this court on the former appeal, construing the contract as providing for a penalty, became the law of the case on the retrial and is not now open to

review.  Gordon v. Burris, 153 Mo. 223; May v. Crawford, 150 Mo. 504; Hesse v. Ass'n, 81 Mo. App. 467; Elevator Co. v. Cleary, 77 Mo. App. 298; Baker v. Railroad, 147 Mo. 140.

BROADDUS, J.—This case was once before this court and will be found reported in 84 Mo. App. 67.   When the case was tried the last time before a jury, the finding was for the plaintiff for one cent nominal damages and judgment accordingly, from which the plaintiff appealed.   For the sake of convenience we adopt in the main the statement of the former case made by Judge Smith who wrote the opinion, as follows:

"On January 27, 1898, the plaintiff's travelling salesman entered into two written contracts with defendant, by the former of which the plaintiff sold defendant certain plows therein described at the prices therein specified, and by the latter of which the plaintiff sold the defendant certain vehicles therein described at the prices therein specified.   The two sales in the aggregate amounted to $829.79.   It was provided in each of the contracts that the defendant agreed "not to countermand this order except on payment of twenty per cent of the net amount of goods hereby purchased as liquidated damages." There was also the further provision that the contract should not be binding unless accepted by the plaintiff.   Subjoined to each of the orders was the following:   "On receipt of guarantee bond from you I agree to furnish my father-in-law Wm. La Grass, of Salisbury, Mo., as guarantor.  (Signed).   W. W. Boatman."   Afterwards, on January 31, the plaintiff wrote to the defendant informing him of the receipt of the contract and that it appreciated the order given its travelling salesman and expressed a hope that he would have a nice trade on its goods, and also inclosing the guarantee bond for the signature of the defendant's father-in-law.

On the first day of February following, the defendant wrote to plaintiff acknowledging the receipt of the guarantee

bond and declining to have his father-in-law sign it. In the same connection defendant wrote the plaintiff that he cancelled the orders given the latter's salesman. On February 2, the plaintiff, replying to the defendant's letter of February 1, stated that the bond sent him was the form in customary use in cases of the kind, but if there was any particular feature about it that was objectionable to him, that if he would advise it (plaintiff) as to what it was, that it had no doubt it could be made satisfactory. Plaintiff inquired how it would suit defendant to have his father-in-law write a letter to it stating that he would guarantee the fulfillment of the latter's contract. On February 3, the defendant wrote acknowledging the receipt of the last preceding letter and saying that he thought it best to cancel his order and to note the same without further communication. On February 5, the plaintiff again wrote defendant that it was willing to do whatever was right in the matter and that it would send its travelling salesman to see him the next week, and not to close any deals until then. On February 7, the defendant wrote plaintiff that its travelling salesman had called to see him and that he saw no reason why he should change his previous instruction to cancel the order. On February 8, the plaintiff wrote the defendant advising him of the receipt of the last preceding letter and also that it was going to either ship the goods ordered or to bring suit for twenty per cent liquidated damages under the contract. The defendant was therein further advised that: 'We now tender the goods to you and we are now ready to fill the contract. If you desire to be released from the contract, then we demand the twenty per cent of the amount for liquidated damages for doing so.' The defendant replied to this by stating that he had previously notified it of the cancellation of the order and that he would not receive the goods, etc. The plaintiff is an Illinois business corporation."

It will be seen that the cause was reversed for the reason that the court held, that the twenty per cent clause in the contract to be paid by the defendant should he countermand the order for the goods, was not in the nature of liquidated damages, but that it was a penalty, and, therefore, the action of the lower court in instructing the jury that that amount constituted the plaintiff's damages was erroneous.    We are asked by plaintiff and appellant to reconsider our decision on that point, but as we believe that the true doctrine was applied to the facts then as now, we decline to do so.

On the trial anew, in instruction number 6 given at the instance of the defendant, the court properly instructed the jury as a question of law, that the term "market value" of the goods "means the usual and ordinary selling price of such goods at the place of delivery, or if there is no market at the place of delivery, then at the nearest point where sales were usually made."    And among others gave the following instruction for the plaintiff:  "No. 1.    The court instructs the jury that under the pleadings and the evidence, the finding and verdict must be for the plaintiff, for nominal damages in any event, and for actual damages if the jury find from the evidence it is entitled to such," and in various other instructions, both for the plaintiff and the defendant, the court declared the law which was, however, in harmony with the two above set out.

An examination of the record does not disclose any evidence upon the part of the plaintiff of the market value of the goods in the city of St. Louis the place of delivery.  There was some evidence of the market value of the goods at Centralia, defendant's place of business, which was not the place of delivery under the contract.    The plaintiff neither proved the market value of the goods at St. Louis, nor asked the court to instruct that it was the place of delivery.    It necessarily follows that plaintiff, under the evidence, was only entitled to a verdict for nominal damages.

The fact that the court allowed the defendant to show the market value of the goods at Centralia would have prejudiced plaintiff's case, had it introduced any testimony of the market value at St. Louis the place of delivery, but as such was not done, the defendant has no ground of complaint.

The court, under the pleadings and evidence, should have instructed the jury to find nominal damages for the plaintiff, but as that was the verdict they arrived at, under all the instructions, it will not be disturbed for the irregularity noted. The cause is affirmed.    All concur.